(No. 26722.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD PEYSER, Plaintiff in Error.

*Opinion filed September 25, 1942.*

HAROLD O. MULKS, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE FULTON delivered the opinion of the court:

Plaintiff in error, Edward Peyser, was convicted in the criminal court of Cook county, of abortion, and sentenced to the penitentiary for not less than one nor more than ten

years, with a recommendation that he serve a minimum of one year, and a maximum of three years. The case was tried before the court without a jury.

- The indictment was returned on September 16, 1941, charging that an abortion was performed by the plaintiff in error upon the body of one Anna Feret by the use of instruments, the particular description of which was unknown to the grand jurors. It further charged that the said instruments were forced into the private parts of Anna Feret, who was then pregnant with child, with the intent to produce an abortion, and by so doing, caused and produced the miscarriage of said Anna Feret, and that it was not then and there necessary to cause said abortion for the preservation of the life of the said Anna Feret.

The errors here complained of are that the State failed to prove beyond a reasonable doubt that Anna Feret was pregnant at the time in question, that there was any expulsion of a foetus or abortion, or that an abortion was not necessary to save the life of the prosecutrix. Also that evidence admitted to show a prior criminal abortion was incompetent, and that it was a violation of section 2, article II, of the Illinois State constitution and the fourteenth amendment to the constitution of the United States to deny a motion for new trial without hearing argument thereon.

As to the first contention the testimony of Anna Feret showed that she was a woman of 28 years of age; that during the month of March, 1941, she had intercourse with a man, but that she had not had relations with any man since then. She further testified that there had been no physical change, until the month of May when she began to become sick in her stomach and at that time missed her menstrual periods. On June 18, she went to see Dr. Peyser, the plaintiff in error. She told the doctor she was pregnant and asked if he would take care of her. After making some inquiry as to when she last menstruated, the doctor said he would take care of her and that the fee would be

$40. She also testified that she then took off her clothes and was placed upon a table and her feet were placed in some holders; that the doctor then inserted something long into her private parts, but that she could not see what it was; that she told the doctor she could not stand the pain and he placed a little cloth over her nose and mouth and told her to inhale, whereupon she lost consciousness. When she came to her senses, he told her everything was all right. She got dressed and paid him $40. He told her she had nothing to worry about and to go home and forget about it.

No further instructions were given her but she says from that time on she suffered almost constant bleeding and appealed to the doctor many times for aid and treatment, but he failed to stop the bleeding. She stated that later she consulted Dr. Czeslawski who took her to the Lutheran Deaconess Hospital where she remained eight days and that four weeks later she went to the Danish-American Hospital where Dr. Eastman was her attending physician. The mother of Anna Feret corroborated her daughter's testimony about the continued bleeding and the frequent requests to the doctor by her daughter for relief.

Dr. Edward F. Czeslawski testified that he saw Anna Feret about the 16th day of July and that she was very weak, showed definite aenemia and gave him a history of vaginal bleeding and discharge, and he advised moving her to a hospital. He took her to the Lutheran Deaconess Hospital and on examination found that the tube to the ovary of Anna Feret was normal and that the uterus was not enlarged. Three days later he made a speculum examination and found that the neck of the womb showed evidence of injuries and tears; that on the anterior surface of the womb there was a large laceration from which blood was escaping. Also that the cervix was lacerated. He stated that in his opinion an instrument had been used.

Dr. Louis K. Eastman, specializing in gynecology, testified that he examined Anna Feret on August 15, 1941, at

the Danish-American Hospital. He used a speculum and found a laceration in the right vaginal vault which had been closed with four sutures. He also found a laceration of the cervix and that she was bleeding from the cervical canal. He stated that in his opinion there had been instrumentation performed on the cervix. He further said that he could not tell at the time of his examination just what the condition was prior to the use of instruments. He stated that the bleeding was not coming from that portion of the cervix or that part of the vaginal vault which had been lacerated but was coming from the uterus.

A witness, Madeline Martin, testified over objection that in 1939 the plaintiff in error had performed an abortion upon her.

Disregarding the evidence submitted by the plaintiff in error, we do not believe that the testimony in this record is sufficient to prove beyond all reasonable doubt that an abortion was actually performed. The only evidence bearing on the issue of the pregnancy is the uncorroborated proof by the prosecutrix herself that she had sexual relations in March, 1941, that she suffered from a stomach sickness in May, 1941, and menstruated six weeks prior to June 18. She related these facts to Dr. Peyser and told him she believed she was pregnant. If the pregnancy occurred in March the foetus would have been of considerable size on June 18 at the time she contends plaintiff in error performed the abortion, and yet there is no testimony by her or anyone else about the discharge of the foetus. The medical testimony offered on the part of the People does not show whether pregnancy ever existed. Dr. Czeslawski stated that the uterus was not enlarged at the time of his examination, a condition which usually accompanies and follows such an operation. If Peyser had been indicted for an attempt to commit an abortion, there was sufficient evidence to submit that question to a jury but positive proof that an abortion was actually accomplished appears to be

lacking. This court has definitely held that the commission of an abortion and the attempt to commit an abortion, are distinct offenses. *People* v. *Heisler*, 300 Ill. 98.

Concerning the contentions that there was no competent proof of the insertion of an instrument into the womb or that an abortion was not necessary to save the life of prosecutrix, we believe the testimony of Anna Feret and of the doctors, including their opinions that instruments had been used and the circumstances surrounding the incident in question, were sufficient to submit those questions of fact to a jury.

Testimony concerning like offenses has been held competent to prove criminal intent in abortion cases. *People* v. *Mitchell*, 368 Ill. 399.

Section 3 of the first division of the Criminal Code provides that "Whoever, by means of any instrument, medicine, drug or other means whatever, causes any woman, pregnant with child, to abort or miscarry, or attempts to procure or produce an abortion or miscarriage, unless the same were done as necessary for the preservation of the mother's life, shall be imprisoned in the penitentiary not less than one year nor more than ten years." Ill. Rev. Stat. 1941, chap. 38, par. 3.

It was essential in this case to establish the *corpus delicti*, which would include proof that Anna Feret was pregnant at the time the abortion was performed. (*People* v. *Wyherk*, 347 Ill. 28.) We do not believe the fact prosecutrix stated that she believed she was pregnant, unaccompanied by any corroboration, is proof beyond a reasonable doubt of pregnancy.

Because of such error the judgment of the criminal court is reversed and the cause remanded.

*Reversed and remanded.*